UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

LIBERTY INSURANCE CORPORATION and
LM INSURANCE CORPORATION,

Civil Action No.:
1:19 Civ. 00182

                Plaintiffs,

-against-

**COMPLAINT**

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY,

                Defendant.

------------------------------------------------------------------------x

**M A D A M S/S I R S:**

Plaintiffs LIBERTY INSURANCE CORPORATION ("LIC") and LM INSURANCE CORPORATION ("LMIC"), by their attorneys, JAFFE & ASHER LLP, as and for their Complaint against defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY ("New York Marine"), allege as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2.      At all times hereinafter mentioned, LIC was, and still is, a stock insurance company organized under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts  02116.

3.      At all times hereinafter mentioned, LIC was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4.      At all times hereinafter mentioned, LMIC was, and still is, a stock insurance company organized under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

5.      At all times hereinafter mentioned, LMIC was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6.      Upon information and belief, at all times hereinafter mentioned, New York Marine was, and still is, a stock insurance company organized under the laws of the State of New York, with its principal place of business located at 412 Mt. Kemble Avenue, Suite 300C, Morristown, New Jersey 07960.

7.      Upon information and belief, at all times hereinafter mentioned, New York Marine was, and still is, an insurance company duly authorized to conduct business within the State of New York.

## SUBSTANTIVE ALLEGATIONS

### A.      The Underlying Actions

#### 1.      The Valbuena Action

8.      On or about June 16, 2015, German Valbuena and Janneth Correa Hernandez commenced an action entitled German Valbuena and Janneth Correa Hernandez v. 650 Madison Owner, LLC, Americon Construction Inc. and Vornardo Office Management LLC, Index No. 156064/2015, in the Supreme Court of the State of New York, County of New York (the "Valbuena Action").

2

9.     In the Valbuena Action, German Valbuena ("Valbuena") and Janneth Correa Hernandez allege that, on May 27, 2015, while working on a construction project located on the 25th floor of the premises located at 650 Madison Avenue, New York, New York, Valbuena suffered bodily injury as a result of a fall from a height.

## II.     The Montel Action

10.     On or about September 3, 2013, Michael Montel ("Montel") and Jane Montel commenced an action entitled <u>Michael Montel and Jane Montel v. RCPI Landmark Properties L.L.C., RCPI 30 Rock 22234849, LLC., Tishman Speyer Properties, L.P., RCPI Trust, Rockefeller Group, Inc., and Beacon Capital Partners, L.L.C.,</u> Index No. 158051/2013, in the Supreme Court of the State of New York, County of New York.

11.     On or about March 16, 2016, Michael Montel and Jane Montel commenced an action entitled <u>Michael Montel and Jane Montel v. 1211 6th Avenue Properties Owner, L.L.C. and 1211 6th Avenue Property Management LLC,</u> Index No. 152258/16, in the Supreme Court of the State of New York, County of New York.

12.     By Order dated November 2, 2016, the action under Index No. 158051/2013 and the action under Index No. 158051/2013 were consolidated under Index No. 158051/2013 (the "Montel Action").

13.     In the Montel Action, Montel Alleges that he suffered bodily injury on May 18, 2013 when he tripped and fell while on a staircase on the premises located at 1211 Avenue of the Americas, New York, New York.

14.     In the Montel Action, Beacon Capital Partners, L.L.C. ("Beacon") 1211 6th Avenue Properties Owner, L.L.C. ("1211 Owners"), and 1211 6th Avenue Property Management LLC impleaded PBM, LLL d/b/a Perfect Building Maintenance ("PBM") via the filing of a Third-Party Summons and Third-Party Complaint, which alleges causes of action against PBM sounding in, among other things, contribution, common law indemnification, and contractual indemnification.

**B.      The Contracts**

15.     By BMS General Services Agreement, dated February 1, 2014, between 650 Madison Owner, LLC ("650 Owner") and Building Maintenance Service, LLC ("BMS"), (the "Janitorial Contract") BMS agreed to provide and supervise cleaning , day cleaning, lighting, exterminating, supplies an window cleaning services for the building located at 650 Madison Avenue, New York, New York (the "Building").

16.     Pursuant to the Janitorial Contract, BMS was required to maintain a commercial general liability insurance policy, with minimum limits of $10 million, and which policy includes 650 Owner "and the Managing Agent and their respective, owners, members, partners, directors, trustees, officers, employee, any mortgage of [650 Owner] and collectively their successors and assigns" as additional insureds.

17.     Pursuant to the Janitorial Contract, BMS agreed that the commercial general liability insurance policy it was required to maintain shall "be primary as respects any insurance or self-insurance maintained by the additional insureds, any insurance maintained by the additional insureds is excess and non-contributory."

4

18.     By Construction Contract dated January 30, 2015, between 650 Owners, as "Owner", and American Construction Inc. ("American"), as Contractor, 650 Owner retained American to perform certain construction services on the 15th and 25th floors of the Building (the "Construction Contract").

19.     Pursuant to the Construction Contract, American agreed to maintain a commercial general liability insurance policy, with minimum limits of $2 million per occurrence, and which policy includes "650 Madison Owner LLC, 650 Madison Office Manager LLC, 650 Madison Retail Manager LLC, and their respective owners, partners, members, affiliates, subsidiaries, directors, trustees, officers, employees, any mortgage of 650 Madison Owner LLC and any master lessor and their successors and assigns as their interest may appear and such other parties as may be listed in paragraph 15 of the Exhibit E (collectively, "Owner Additional Insureds")."

20.     The Construction Contract provides that "[a]ll insurance coverage maintained by Contractor (primary and excess liability policies) shall be primary insurance as to Owner Additional Insureds."

21.     By Service Contract dated December 7, 2012, between 1211 Owners, as Owner, 1211 6th Avenue Property Management LLC, as Agent, Cushman & Wakefield, Inc., as SubAgent, PBM, as Contractor, (the "Service Contract") PBM agreed to provide General Cleaning Services, and other services, for the property located at 1211 Avenue of the Americas, New York, New York 10036 (the "Property").

5

22.    The location where PBM is to provide its services under the Service Contract is identified as "1211 Avenue of the Americas, New York, NY."

23.    The Service Contract identifies the services that PBM is supposed to perform as including the following:

> **Stairwell Maintenance -** Police all stairwells throughout the property to ensure that these areas (including landings, treads, risers, nosing, stair rails, banisters, protective wire guards, doorways, etc.) are clean and clear of trash, liter, dirt & debris.  Remove any graffiti with approved cleaning products. Report any material, equipment or other obstructions to the Manager immediately.
>
> **Stairwell Hard Surface Floors -** Sweep & mop all stairwells throughout the property removing any tar, gum or other soil substances.  Utilize the appropriate equipment, methods and cleaning products in accordance with the manufacturer's recommendation or approved industry standard.

24.    The Service Contract identifies the services that PBM is supposed to perform as including the following:

> **1.14 Exterior Plaza Maintenance**
>
> Contractor shall furnish any and all required equipment, material, labor, supervision, permits and/or licenses necessary to perform cleaning, sweeping and power washing of all plaza areas and sidewalks surrounding 1211 Avenue of the Americas including the raised planter on 5th Avenue. Cleaning shall include removal of all cigarette butts and debris from all grating (MTA or otherwise) on the sidewalks and drains. Contractor shall also check all planters surrounding the building and remove any debris in the planters or stains on the planters. Contractor shall also check for any graffiti and/or stickers/signage placed on the building/planters/raised planter, etc. and promptly remove same.  To keep the plaza areas free of debris at all times, Contractor shall provide no less than one dedicated porter during the hours of 6:00 am to 5:00 pm for

6

the sole purpose of inspecting and cleaning all plaza/sidewalk areas. From 6:00 pm to 1:30 am, Contractor shall provide personnel to perform periodic checks of the 5th Avenue plaza but not less than once per hour to ensure that the area is free of debris. All maintenance functions to be performed in compliance with any laws and requirements including but not limited to disposal of waste products in an environmentally safe manner.

25.     Upon information and belief, Montel alleges that his accident occurred in a stairwell located on the Property.

26.     Pursuant to the Service Contract, PBM agreed to maintain a commercial general liability insurance policy, with minimum limits of $1 million per occurrence.

27.     The Service Contract provides that "SubAgent and Owner shall be named as additional insureds under Contractor's General Liability."

28.     The Service Contract provides that "Contractor's Comprehensive General Liability Insurance shall be primary, and any such insurance maintained by SubAgent and/or Owner shall be secondary and non-contributory and excess over the Comprehensive General Liability Insurance to be maintained by Contractor hereunder."

**C.     The Policies**

29.     Upon information and belief, Americon, in compliance with the Construction Contract, obtained a Commercial General Liability Policy (Occurrence Form) from New York Marine, No. GL201400001445, with a policy period from September 1, 2014 to September 1, 2015 (the "First New York Marine Policy").

7

30.   The First New York Marine Policy has a "Limit Each Occurrence" of $2 million.

31.   The First New York Marine Policy contains an endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization," which provides, in part, as follows:

> **A.   Section II – Who is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused in whole or in part by:
>
> **1.**   Your acts or omissions; or
> **2.**   The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Hereinafter, the "AI Endorsement".)

32.   The Schedule on the AI Endorsement provides as follows:

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

33.   The First New York Marine Policy contains an "Other Insurance" provision that provides, in relevant part, that "[t]his insurance is primary except when b. below applies;" and no portion of "b. below" applies to the coverage sought in this action.

8

34.     Upon information and belief, New York Marine is providing a defense to Americon for the claims alleged in the Valbuena Action under the First New York Marine Policy.

35.     Upon information and belief, PBM, in compliance with the Service Contract, obtained an insurance policy, with a Commercial General Liability Coverage Part, from New York Marine, No. GL2012ART01211, with a policy period from December 1, 2012 to December 1, 2013 (the "Second New York Marine Policy").

36.     The Second New York Marine Policy has an "Each Occurrence Limit" of $1 million.

37.     The Second New York Marine Policy contains the same form of endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" as the First New York Marine Policy.

38.     The Second New York Marine Policy contains an "Other Insurance" provision that provides, in relevant part, that "[t]his insurance is primary except when b. below applies;" and no portion of "b. below" applies to the coverage sought in this action.

39.     Upon information and belief, New York Marine is proving a defense to PBM for the claims alleged in the Montel Action under the Second New York Marine Policy.

40.     LIC issued a Commercial General Liability policy, No. TB7-Z11-260272-024, with a policy period from June 1, 2014 to June 1, 2015, to BMS, as the first Named Insured (the "LIC Policy").

9

41.    The LIC Policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

b. Excess Insurance

(1) This insurance is excess over:

* * *

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

42.    The LIC Policy further provides, with respect to additional insureds, in relevant part, as follows:

[T]his insurance is excess over any other insurance available to the additional insured for which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit".

43.    LMIC issued a Commercial General Liability policy, No. TB5-Z11-260634-033, with a policy period from May 1, 2013 to May 1, 2014, to Beacon, as the first Named Insured (the "LMIC Policy").

44.    1211 Owners also qualifies as a Named Insured under the LMIC Policy.

45.    The LMIC Policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

b. Excess Insurance

(1) This insurance is excess over:

10

\* \* \*

> (b) Any other primary insurance available to you covering
> liability for damages arising out of the premises or operations,
> or the products and completed operations, for which you have
> been added as an additional insured.

## C.    Tenders and Response

46.    By letters dated October 15, 2015, November 19, 2015, and October 10, 2018, the defense and indemnity of 650 Owner was tendered to New York Marine for the Valbuena Action.

47.    New York Marine has never provided a written response to the tender of the defense and indemnity of 650 Owner for the Valbuena Action; rather, New York Marine has simply denied coverage.

48.    On or about June 7, 2016, August 9, 2016, and September 14, 2016, the defense and indemnity of 1211 Owners was tendered to New York Marine for the Montel Action.

49.    New York Marine has never provided a written response to the tender of the defense and indemnity of 1211 Owners for the Montel Action; rather, New York Marine has simply denied coverage.

50.    As a result of New York Marine's breach of its duty to defend, LIC has been forced to drop down and provide a defense to the 650 Owner for the Valbuena Action.

51.     As a result of New York Marine's breach of its duty to defend, LMIC has been forced to drop down and provide a defense to 1211 Owners for the Montel Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

52.     LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "51" of this Complaint as if more fully set forth herein.

53.     650 Owner qualifies as an additional insured under the First New York Marine Policy for the claims alleged in the Valbuena Action.

54.     New York Marine owes 650 Owner a duty to defend and indemnify for the claims alleged in the Valbuena Action.

55.     New York Marine's duty to defend and indemnify is primary as compared to any duty to defend and indemnify owed by LIC to 650 Owner.

56.     Although duly demanded, New York Marine has failed and refused to provide a primary defense and indemnification to 650 Owner.

57.     LIC seeks a determination of its rights with regard to the First New York Marine Policy, including a declaratory judgment that New York Marine was and is required to defend and indemnify 650 Owner for the Valbuena Action under the First New York Marine Policy, and that such coverage applies on a primary basis as compared to coverage under the LIC Policy.

58.     LIC has no adequate remedy at law.

12

## AS AND FOR A SECOND CLAIM FOR RELIEF

59.    LIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "58" of this Complaint as if more fully set forth herein.

60.    As a result of New York Marine's failure to acknowledge that it owes a primary duty to defend 650 Owner for the Valbuena Action, LIC has been required to pay for 650 Owner's defense for the Valbuena Action.

61.    As a result of New York Marine' failure to acknowledge its primary duty to defend 650 Owner for the Valbuena Action, LIC has incurred substantial attorneys' fees and other costs to defend 650 Owner.

62.    At all times mentioned herein, New York Marine has failed and refused to acknowledge its primary coverage obligation and to reimburse LIC for costs incurred to defend 650 Owner for the Valbuena Action.

63.    As a result of the foregoing, LIC is entitled to a money judgment against New York Marine in an amount equal to what LIC has incurred and will incur to defend and/or indemnify 650 Owner for the Valbuena Action, in an amount to be determined by the Court, plus interest.

## AS AND FOR A THIRD CLAIM FOR RELIEF

64.    LMIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "63" of this Complaint as if more fully set forth herein.

65.    1121 Owners qualifies as an additional insured under the Second New York Marine Policy for the claims alleged in the Montel Action.

66.    New York Marine owes 1121 Owners a duty to defend and indemnify for the claims alleged in the Montel Action.

67.    New York Marine's duty to defend and indemnify is primary as compared to any duty to defend and indemnify owed by LMIC to 1121 Owners.

68.    Although duly demanded, New York Marine has failed and refused to provide a primary defense and indemnification to 1121 Owners.

69.    LMIC seeks a determination of its rights with regard to the Second New York Marine Policy, including a declaratory judgment that New York Marine was and is required to defend and indemnify 1121 Owners for the Montel Action under the Second New York Marine Policy, and that such coverage applies on a primary basis as compared to coverage under the LMIC Policy.

70.    LMIC has no adequate remedy at law.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

71.    LMIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "70" of this Complaint as if more fully set forth herein.

72.    As a result of New York Marine's failure to acknowledge that it owes a primary duty to defend 1121 Owners for the Montel Action, LMIC has been required to pay for 1121 Owners' defense for the Montel Action.

14

73.    As a result of New York Marine' failure to acknowledge its primary duty to defend 1121 Owners for the Montel Action, LMIC has incurred substantial attorneys' fees and other costs to defend 1121 Owners.

74.    At all times mentioned herein, New York Marine has failed and refused to acknowledge its primary coverage obligation and to reimburse LMIC for costs incurred to defend 1121 Owners for the Montel Action.

75.    As a result of the foregoing, LMIC is entitled to a money judgment against New York Marine in an amount equal to what LMIC has incurred and will incur to defend and/or indemnify 1121 Owners for the Montel Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiffs demand judgment as follows:

1.      On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY INSURANCE CORPORATION and defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY with respect to their liability insurance coverage obligations for 650 Owner for the Valbuena Action, including a declaratory judgment that defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY is required to defend and indemnify 650 Owner for the Valbuena Action, and that such coverage would apply on a primary basis as compared to coverage under the LIC Policy for 650 Owner;

2.      On the second claim for relief, a money judgment in favor of plaintiff LIBERTY INSURANCE CORPORATION and against defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY, in an amount to be determined by the Court, plus interest;

3.      On the third claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LM INSURANCE CORPORATION and defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY with respect to their liability insurance coverage obligations for 1121 Owners for the Montel Action, including a declaratory judgment that defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY is required to defend and indemnify 1121 Owners for the Montel Action, and that such coverage would apply on a primary basis as compared to coverage under the LMIC Policy for 1121 Owners;

16

4.     On the fourth claim for relief, a money judgment in favor of plaintiff LM INSURANCE CORPORATION and against defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY, in an amount to be determined by the Court, plus interest; and

5.     Granting plaintiffs recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated:  White Plains, New York
        January 7, 2019

                                   Yours, etc.,

                                   JAFFE & ASHER LLP

                                   By: _____
                                       Marshall T. Potashner, Esq.
                                       mpotashner@jaffeandasher.com
                                   Attorneys for Plaintiff
                                   LIBERTY INSURANCE CORPORATION and
                                   LM INSURANCE CORPORATION
                                   445 Hamilton Avenue, Suite 405
                                   White Plains, New York 10601
                                   (212) 687-3000