UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

LIBERTY MUTUAL INSURANCE
CORPORATION and LM INSURANCE
CORPORATION,

                                      Plaintiffs,

                 -against-

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY,

                                   Defendant.

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/2020

1:19-cv-00182-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      German Valbuena was injured in the building located at 650 Madison Avenue, New York,

New York, which was owned by 650 Madison Owner, LLC ("650 Owner"). As a result, Valbuena

sued 650 Owner and several other defendants in state court. The parties in this case, Plaintiffs LM

Insurance Corporation ("LIC") and Liberty Mutual Insurance Corporation ("LMIC") and

Defendant New York Marine and General Insurance Company ("NY Marine") dispute who must

pay for 650 Owner's legal fees and liabilities in the state court action. Whether NY Marine must pay

turns on whether Americon Construction Inc. ("Americon"), which was working in the building,

proximately caused Valbuena's injuries. Because the state court action has not actually decided the

issue of proximate causation, it has not been determined with certainty that Americon did not

proximately cause Valbuena's injuries. As a result, NY Marine has a duty to pay for 650 Owner's

legal fees and may have a duty to indemnify 650 Owner for liabilities incurred in that action.

# I.     BACKGROUND

## a.  Facts

This dispute stems from an accident at a construction site in a building owned by 650 Owner.  650 Owner and American had entered into a contract pursuant to which American would do construction work on certain floors of the building.  Declaration of Eric R. Leibowitz in Support of Defendant's Motion for Summary Judgment ("First Leibowitz Decl."), Dkt. No. 54, Ex. S ("Construction Contract") at 1.  Like many construction agreements, this arrangement carried some risk for 650 Owner.  There was a possibility that American's work would result in liability for which 650 Owner could be held responsible, such as an accident at the building giving rise to a personal injury claim.  To help manage that risk, the Construction Contract included an indemnification clause that required American to protect 650 Owner from certain liabilities arising out of or connected with American's work.  *Id.* at Art. 10.4.

To protect itself against liabilities and risks arising from its construction work, American had obtained an insurance policy from NY Marine.  Declaration of Stephanie Grein ("Grein Decl."), Dkt. No. 56, Ex. A (the "NY Marine Policy"), at NYMAGIC000453.  The NY Marine Policy provided additional insured coverage to 650 Owner, which allowed 650 Owner to receive some of the protections and coverage provided by the NY Marine Policy even though it was American that had procured the policy.

650 Owner had also entered into a contract with Building Maintenance Service LLC ("BMS"), under which BMS was to provide janitorial services for the building, including window cleaning services.  First Leibowitz Decl., Ex. R ("BMS Contract").  Like American, BMS had also obtained an insurance policy that provided additional insured coverage to 650 Owner.  Defendant's Rule 56.1 Statement ("D.'s 56.1 Statement"), Dkt. No. 62, at ¶¶ 90–91.  LIC issued the insurance policy to BMS.  First Leibowitz Decl., Ex. T ("LIC Policy").

This suite of contracts became relevant when German Valbuena, who was employed by BMS as a commercial window washer, D.'s 56.1 Statement at ¶ 52, was injured in an American construction area on May 27, 2015.  BMS was responsible for hiring, supervising, and directing Valbuena, and was also responsible for furnishing and maintaining all equipment and supplies required to perform his work.  *Id.* at ¶¶ 81–84.

On May 27, 2015, Valbuena was instructed by his BMS supervisor to "clean the 25th floor post construction build out space," which was one of the floors on which American was engaged to perform construction work.  *Id.* at ¶ 56; Construction Contract at 1.  To clean the windows, Valbuena stood on top of a radiator that was covered with paper, duct tape and plastic.  D.'s 56.1 Statement at ¶¶ 58–60.  When stepping down from the radiator, Valbuena "felt like his left foot was tripping and, after the accident, he attributed his tripping to the duct tape."  *Id.* at ¶ 62.  A crucial issue in this case is whether American caused Valbuena's accident.

### b.  The Underlying Action

On June 16, 2015, Valbuena and his wife, Janneth Correa Hernandez, commenced an action in the Supreme Court of the State of New York against several parties, including 650 Owner and American (the "Underlying Action").  Plaintiff Liberty Insurance Corporation's Amended Statement of Undisputed Facts ("P.'s 56.1 Statement"), Dkt. No. 59, ¶ 1.  650 Owner asserted cross-claims against American, seeking indemnification from American pursuant to the indemnification clause in the Construction Contract and common law.[1]  First Leibowitz Decl., Ex. G at 5–7.

Valbuena and his wife sought recovery for personal injuries allegedly sustained by Valbuena as a result of his accident.  First Leibowitz Decl., Ex. D. (the "Underlying Complaint").  On November 11, 2015, Valbuena and his wife served a Bill of Particulars, setting forth in greater detail

---

[1] Additionally, American asserted cross-claims against 650 Owner, 650 Madison Office Manager LLC ("650 Manager") and a third defendant.  D.'s 56.1 Statement at ¶ 49.

the nature of the allegations in their complaint.[2]  D.'s 56.1 Statement at ¶ 47.  The Bill of Particulars

laid out the circumstances of the accident:

> At the time of the accident, [Valbuena] was working for BMS-Building
> Maintenance . . . .  He was working on the 25th floor of the building located at 650
> Madison Ave. and had been working at that building for one day when the accident
> occurred.  At the time of the accident, the plaintiff was engaged in
> renovation/construction work and was cleaning/repairing the windows located on
> the 25th floor, following painting, spackling and caulking that had taken place on the
> windows previously.  The entire floor, along with other floors in the building, were
> undergoing renovations and construction at the time of plaintiff's accident.

First Leibowitz Decl., Ex. E ("Bill of Particulars"), ¶¶ 4–5.  In a paragraph Defendant uses to argue

that Americon did not cause Valbuena's injury, the Bill of Particulars explained that "there was a

newspaper, plastic and debris on top of the radiator/step that he was standing on as he was engaged

in such duties, and *as a result of not being provided adequate safety devices to prevent a fall*, he was caused to

slip and fall to the ground."  *Id.* ¶ 17 (emphasis added).

   In order to determine the point at which any duty of NY Marine to pay for the defense of

650 Owner in the Underlying Action terminated, it is necessary to understand the ultimate

disposition of the various claims and subsequent appeals in the Underlying Action.  Three motions

for summary judgment were filed.  The plaintiffs, Valbuena and Hernandez, filed a partial motion

for summary judgment.  First Leibowitz Decl., Ex. J.  650 Owner and 650 Manager (together, "650

Madison") filed a partial motion for summary judgment seeking dismissal of all but one of Valbuena

and Hernandez's claims and enforcement of their claim for contractual indemnification against

Americon.  First Leibowitz Decl., Ex. K.  Americon filed a motion for summary judgment on all

claims against it, seeking dismissal of "the plaintiffs' [c]omplaint . . . and all cross claims asserted

against [Americon]."  First Leibowitz Decl., Ex. L at ECF p. 2.  The court dismissed all of Valbuena

and Hernandez's claims against Americon, and all but one of their claims against 650 Madison.  First

---

[2] *Northway Eng'g, Inc. v. Felix Indus., Inc.*, 77 N.Y.2d 332, 336 (1991) ("[A] bill of particulars amplifies a pleading by setting forth in greater detail the nature of the allegations and what the party making them intends to prove.").

Leibowitz Decl., Ex. M.  The court denied 650 Madison's motion for summary judgment seeking contractual indemnification from American.  *Id.*

All parties appealed to the Appellate Division of the New York State Supreme Court, First Judicial Department.  650 Madison appealed the denial of their motion with respect to their indemnification cross-claim against American.  First Leibowitz Decl., Ex. O.  On July 2, 2019, Valbuena and Hernandez appealed the dismissal of all but one of their claims against 650 Madison, but they did not appeal the dismissal of their claims against American.  First Leibowitz Decl., Ex. N ("Notice of Appeal").

Except for the indemnification cross-claim by 650 Madison against American, all other claims in the Underlying Action were settled when LIC agreed to pay $900,000 on behalf of 650 Owner.  Declaration of Marshall T. Potashner in Opposition to Summary Judgment ("Second Potashner Decl."), Dkt. No. 61, at ¶ 3; Def.'s 56.1 Statement at ¶ 77.  By letter dated December 11, 2019, Valbuena and Hernandez withdrew their appeal.  Def.'s 56.1 Statement at ¶ 78.  As a result, the only remaining claim in the state court action is 650 Madison's contractual indemnification cross-claim against American, in which 650 Madison asserts that American must pay for the liability it incurred in the Underlying Action.  The appeal regarding that cross-claim is pending.

### c.  Procedural History

Plaintiffs initiated this action on January 7, 2019.  Complaint, Dkt. No. 1.  LIC had been paying for the defense of 650 Owner and 650 Manager in the Underlying Action.  P.'s 56.1 Statement at ¶ 27.  But it believed that NY Marine should have been paying for that defense because they were insured by the NY Marine policy issued to American.  Therefore, LIC sought a determination of its rights with regard to the NY Marine Policy, including a declaratory judgment that NY Marine was and is required to defend and indemnify 650 Owner, and that such coverage applies on a primary basis as compared to the LIC Policy—that is, that NY Marine would have to

pay out under its policy regardless of any coverage supplied by the LIC Policy.  Complaint ¶ 57.

LIC also sought "a money judgment against New York Marine in an amount equal to what LIC has

incurred and will incur to defend and/or indemnify 650 Owner for the Valbuena Action."  *Id.* ¶ 63.[3]

On March 6, 2020, LIC and NY Marine filed cross-motions for summary judgment.  LIC

moved for partial summary judgment, seeking a determination that NY Marine owes a duty to

defend 650 Owner and 650 Manager in the Underlying Action, that the duty to defend continues at

least until all appeals as against Americon are resolved, and that this coverage would apply on a

primary basis before coverage under LIC's policy issued to BMS.  Dkt. No. 55.  NY Marine's

motion for summary judgment seeks the dismissal of this action, a declaration that NY Marine has

no obligation to provide defense or indemnity coverage to 650 Madison for the Underlying Action,

and a declaration that it has no obligation to reimburse Plaintiffs for defense fees and costs incurred.

Dkt. No. 52.  LIC does not seek summary judgment on the issue of whether to NY Marine has a

duty to provide indemnity coverage to 650 Owner, instead arguing that such a determination is

premature.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary

Judgment ("P.'s Opp."), Dkt. No. 63, at 13–14.  LIC filed its opposition to NY Marine's motion for

summary judgment on April 3, 2020.  Dkt. No. 63.  On the same day, NY Marine filed its

opposition.  Dkt. No. 67.  The parties filed their replies on April 17, 2020.  Dkt. Nos. 70, 72.

---

[3] The Complaint also asserted claims by LM Insurance Corporation ("LMIC") against Defendant in connection with a
dispute arising from a separate state court action (the "Montel Action").  Complaint ¶¶ 64–75.  On February 7, 2020, the
parties stipulated to the dismissal with prejudice of LMIC's claims related to the Montel Action, which the Court
endorsed on February 11, 2020.  Dkt. No. 46.  LIC is now the only Plaintiff with a live claim.

## II.     LEGAL STANDARD

### a.  Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting former Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he or she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quotation omitted).  The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  "Assessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quotation omitted).

Still, "[t]he possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989).

### b. Interpretation of Insurance Contracts Under New York Law[4]

"In determining a dispute over insurance coverage, we first look to the language of the policy. We construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 N.Y.3d 157, 162 (2005). "[I[f an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010) (quoting *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009)).

### III.   ANALYSIS

#### a. Duty to Defend

NY Marine has an ongoing duty to defend 650 Owner in the Underlying Action because the Underlying Complaint demonstrated a reasonable possibility that NY Marine would be required to

---

[4] The Court applies New York law because the parties' briefing assumes New York law applies. *See Boule v. Credit One Bank*, No. 15-cv-8562 (RJS), 2016 WL 3015251, at *2 n.1 (S.D.N.Y. May 11, 2016) ("The Court will address the parties' arguments under New York law, since that is the standard they apply.") (citing *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-cv-7908 (PAE), 2013 WL 2631043, at *2 n.3 (S.D.N.Y. June 11, 2013) ("[T]he Court applies New York law for both plaintiffs, because all parties apply New York law in their submissions: Where '[t]he parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.")).

indemnify 650 Owner and it has not been established with certainty that the NY Marine Policy does not provide coverage to 650 Owner for the Underlying Action.

### i.   Legal Standard Regarding the Duty to Defend

Insurance contracts often contain a "duty to defend" "'in order to ensure [an] adequate . . . defense of [the] insured,' without regard to the insured's ultimate likelihood of prevailing on the merits of a claim." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) (quoting *General Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 456 (2005)). "In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137). "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Id.* (internal quotation marks omitted). "The duty [to defend] remains 'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'" *Id.* (alterations in original) (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137). "Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Id.* (internal quotation marks omitted).

Here, 650 Owner is an additional insured on the NY Marine Policy. "[T]he standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 715 (2007). "[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.*

(internal quotation marks omitted).  "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier."  *Id.* (internal quotation marks omitted).

The duty to defend is a lasting obligation that continues "until it is determined *with certainty* that the policy does not provide coverage."  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).  "There are at least three kinds of uncertainty that can give rise to such a duty to defend.  The first is factual:  did the injury occur in a time, place, or way that is covered by the policy?  The second is legal:  will the cases governing the insurance policy be read to impose coverage in a given situation?  . . .  Each of these uncertainties will ultimately be resolved by courts or juries—and often in favor of the insurer, thereby precluding coverage and the duty to indemnify.  But until they are, the insurer cannot avoid its duty to defend."  *Id.*

### ii. Application

#### A. Existence of the Duty to Defend

NY Marine had a duty to defend 650 Owner because there was a reasonably possibility that Valbuena's injury fell within the scope of the New York Marine Policy. [5]  The duty to defend is triggered "whenever the allegations of the complaint suggest a reasonable possibility of coverage," *Euchner-USA, Inc.*, 754 F.3d at 141 (internal quotation marks omitted), so the Court looks to the coverage provided to 650 Owner by the NY Marine Policy to determine whether NY Marine had a duty to defend.  The NY Marine Policy provided additional insured coverage to 650 Owner for bodily injury "caused, in whole or in part, by:  1. [American's] acts or omissions; or 2. The acts or

---

[5] The NY Marine Policy established a duty to defend as follows:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  NY Marine Policy at NYMAGIC000456.

omissions of those acting on [American's] behalf; in the performance of [American's] ongoing operations . . . ."  NY Marine Policy at NYMAGIC000532.[6]

The limitation to liability "caused in whole or in part" by American's acts or omissions limits coverage to injuries proximately caused by American.  *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (2017) (holding that the phrase "caused, in whole or in part" required proximate causation).  Therefore, NY Marine had a duty to defend 650 Owner if the allegations of the Underlying Complaint suggested a reasonable possibility that American or its agent proximately caused Valbuena's injuries.

Based on the complaint, there was a reasonable possibility that American's conduct was a proximate cause of Valbuena's injuries.  The Underlying Complaint alleged that "the injuries caused the plaintiff GERMAN VALBUENA, were caused solely and wholly due to the negligence of the defendants . . . ."  Underlying Complaint ¶ 13.  The Underlying Complaint also alleged that American was engaged "to perform certain construction and/or rehabilitation work at the [Building]."  *Id.* ¶ 11.  "[T]he negligence of the defendants in causing injuries to [Valbuena]" allegedly included, *inter alia*, "allowing a dangerous, defective condition to be present and to be used during the course of construction, alteration or repairs."  *Id.* ¶ 14.  Thus, the plaintiffs alleged that the defendants, including American, caused Valbuena's injuries by negligently allowing dangerous conditions to be present during construction, and that American was engaged to perform construction work at the building.  Therefore, the Underlying Complaint suggested a reasonable

---

[6] Plaintiffs moved for summary judgment seeking a declaration that NY Marine owed a duty to defend both 650 Owner and 650 Manager.  *See* Dkt. No. 55.  But only 650 Owner, not 650 Manager, was a party to the Construction Contract with American.  The NY Marine Policy to American provided additional insured coverage to "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."  Grein Decl., Ex. A at NYMAGIC000532.  Therefore, only 650 Owner, not 650 Manager, qualifies as an additional insured capable of receiving coverage under the NY Marine Policy.  Though Plaintiffs argued in their memorandum of law in support of their motion for summary judgment that both 650 Owner and 650 Manager qualified as additional insured, they dropped the argument in their opposition to Defendant's motion and their reply.  *Compare* Dkt. No. 51 at 13–15, *with* Dkt. Nos. 63, 70.

possibility that Americon proximately caused Valbuena's injuries, so there was a reasonable possibility that the accident was within the scope of the coverage provided to 650 Owner under NY Marine Policy.  Therefore, NY Marine had a duty to defend 650 Owner from Valbuena's suit.

The additional detail provided in the Bill of Particulars did not terminate the duty to defend because it did not establish "*with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620 (emphasis in original).  It was largely consistent with the Underlying Complaint.  It stated that "[t]he accident occurred on the 25th floor of the building located at 650 Madison Ave., in an unoccupied area of new construction that was taking place."  Bill of Particulars ¶ 10.  It explained that the defendants were negligent in "that they failed to maintain the premises in a safe and reasonable manner; that they allowed the premises to be, become and remain in a hazardous and dangerous condition; . . . [and] that the defendant(s) allowed the condition complained of herein to exist for an unreasonable period of time after they knew or should have known that such a condition existed . . . ."[7]  *Id.* ¶ 28.  It thus asserted that the injury occurred in a construction site that Americon was working on, and that defendants—including Americon—negligently allowed that site to become, and remain, unsafe and hazardous.  The Bill of Particulars thus confirmed the possibility that Americon proximately caused Valbuena's injuries.

Defendant highlights that the Bill of Particulars also asserted that "there was a newspaper, plastic and debris on top of the radiator/step that [Valbuena] was standing on as he engaged in [his] duties, and *as a result of not being provided adequate safety devices to prevent a fall*, he was caused to slip and fall to the ground." *Id.* ¶ 17 (emphasis added).  But, read in context, the statement that the injury resulted from a lack of adequate safety devices is not a concession that the failure to provide adequate safety devices was the sole cause of Valbuena's injuries.  And that the lack of safety devices

---

[7] NY Marine thus incorrectly asserts that "Valbuena does not claim that his accident occurred as a result of any dangerous condition of the premises."  Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Opp."), Dkt. No. 67, at 6.

contributed to the accident does not necessarily mean that American did not proximately cause Valbuena's injuries—the concept of proximate cause embraces the possibility of multiple causes of an injury.

The concept of proximate cause, also known as legal cause, "stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314 (1980). "Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause." *Id.* at 314–315. As most relevant here, "[w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed." *Id.* at 315. "Under New York law, . . . notwithstanding the intervention of an act of a third person between the original negligence and the ultimate injury, the original negligent actor can be found to have proximately caused the injury if the intervening act was normal or foreseeable." *Woodling v. Garrett Corp.*, 813 F.2d 543, 555–56 (2d Cir. 1987) (citing *Derdiarian*, 51 N.Y.2d at 315). "When, as is usually the case, circumstances permit varying inferences as to the foreseeability of the intervening act, the proximate cause issue is a question of fact for the jury." *Id.*

BMS' alleged failure to provide safety devices was an intervening act that did not necessarily sever the causal connection between American's actions and Valbuena's injury. "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed." *See Derdiarian*, 51 N.Y.2d at 315. Whether it did sever the causal connection was a question of fact, so the Bill of Particulars did not establish as a matter of law that American did not proximately cause the accident. Therefore, the Bill of Particulars did not

establish with certainty that NY Marine would not have to indemnify 650 Owner.  NY Marine's duty
to defend thus survived the Bill of Particulars.[8]

## B.  Continuation of the Duty to Defend

The duty to defend continues because it has not been determined with certainty that the NY
Marine Policy does not provide coverage to 650 Owner.  In order to establish with certainty that the
NY Marine Policy does not provide coverage, it must be determined with certainty that Americon
did not proximately cause Valbuena's injuries.  The parties agree that "the court's decision in the
Underlying Action indicated that Valbuena's injuries were not proximately caused, in whole or in
part, by Americon."  D.'s 56.1 Statement at ¶ 96.  But the only record citation in support of this
statement is to the Court's written order on summary judgment.  Leibowitz Decl., Ex. M.  That
order says nothing about proximate causation.  With respect to Americon, the order says only,
"motion 005 by defendant Americon is granted for §200, §240 and §241, and their cross-claim for
common law indemnification and contribution is denied as moot."  *Id.*  Nothing in the summary
judgment record supports the conclusion that the court in the Underlying Action actually decided
that Americon did not proximately cause Valbuena's injuries.

While the court dismissed all of Valbuena's claims against Americon on June 21, 2019, the
only on-the-record rationale regarding Americon concerned the fact that Americon was not the
owner of the building and that it was not a party to the contract between 650 Madison and BMS
under which Valbuena performed his work.[9]  Underlying Decision Tr. at 35:10–12 ("Motion 005 by

---

[8] *Worth Const. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 416 (2008), is not to the contrary.  The Court of Appeals found that
the insurer of a subcontractor did not have a duty to defend where the stairway it had installed was merely the "situs" of
the accident.  But *Worth* is distinguishable because "[t]he allegation in the complaint that the stairway was negligently
constructed was the only basis for asserting any significant connection between [the subcontractor's] work and the
accident."  *Id.* at 416.  Worth then admitted that the subcontractor was not negligent, making the staircase "merely the
situs of the accident."  *Id.*  Here, there was no such admission destroying the connection between Americon's conduct
and the accident.
[9] Much of the June 21, 2019 hearing was spent discussing whether safety equipment was readily available to Valbuena, an
issue that arose in the context of one of Valbuena's claims against 650 Madison and that was relevant to whether
Valbuena's failure to use readily available equipment was the sole proximate cause of his injuries.  However, the state
court found that "there is a question of fact as to whether the equipment was available in the building."  Underlying

Americon who is not the owner – remember, the contract was directly between BMS and 650 Madison.  It's granted . . . ."); *id.* at 37:15–17 ("Americon moved on [N.Y. Labor Law §§] 200, 240, and 241.  It's granted in all respects because Americon wasn't in the contract.").  Moreover, a finding of a lack of proximate causation was not necessary for Americon to prevail on its motion for summary judgment dismissing Valbuena's claims—for each of Valbuena's claims against Americon, Americon asserted a basis of dismissal independent of proximate causation.  Leibowitz Decl., Ex. L.  Thus, the dismissal of the claims against Americon did not establish with certainty that Americon did not proximately cause Valbuena's injuries.[10]

The pending appeal in the Underlying Action could implicate the issue of the extent to which Americon caused Valbuena's injuries.  The appeal concerns the cross-claim by 650 Owner against Americon for contractual indemnification.[11]  The cross-claim is based on the Construction Contract between Americon and 650 Owner, which requires Americon to indemnify 650 Owner against liabilities "which arise out of or are connected with, or are claimed to arise out of or be connected with" Americon's conduct.[12]  Construction Contract at Art. 10.4.  This is a distinct, less

---

Decision Tr. at 33:20–21.  As a result, the court denied summary judgment and allowed that claim against 650 Madison to go to the jury.  Thus, while the discussion of this issue did relate to proximate causation, it was neither decided by the summary judgment ruling nor related to Americon.

[10] It is possible that something else in the Underlying Action but not in the summary judgment record indicated that Americon did not proximately cause Valbuena's injuries.  For example, there was a June 6, 2019 hearing in which the court in the Underlying Action issued a tentative ruling on some of the claims at issue.  *See* Underlying Decision Tr. at 3:12–25.  But the transcript of that hearing has not been presented to the Court and is unavailable on the docket of the Underlying Action.

[11] All other claims were settled, Second Potashner Decl. ¶ 3, and Valbuena and Hernandez withdrew their own appeal.  D.'s 56.1 Statement at ¶ 78.

[12] The indemnification clause provides, in full:

> To the fullest extent permitted by law, [Americon] shall indemnify, defend, save and hold [650 Owner] . . . harmless from and against all liability, damage, loss, claims, demands and actions . . . relating to personal injury, property damage, wrongful death or economic loss (or any other matter for which insurance coverage is required of [Americon]) which arise out of or are connected with, or are claimed to arise out of or be connected with:  Any accident or occurrence which happens, or is alleged to have happened, in or about the place where such Work is being performed or in the vicinity thereof (i) while Contractor is performing the Work, either directly or indirectly through a Contractor or materials Contract, or (ii) while any of Contractor's or subcontractor's ( of any tier) property, equipment or personnel are in or about such place or the vicinity thereof, provided the foregoing arise or result from the performance of the Work;  .2 Any breach of contract of Contractor (and its subcontractors of any tier);  or .3 The use, misuse, erection, maintenance, storage, operation or failure

onerous standard than proximate causation. "Fundamentally, 'arising out of is not the functional equivalent of proximately caused by.'" *Hanover Ins. Co. v. Philadelphia Indem. Ins. Co.*, 73 N.Y.S.3d 549, 550 (1st Dep't 2018) (quoting *Burlington Ins. Co.*, 29 N.Y.3d at 324 (2017). "The New York Court of Appeals has held that the phrase arising out of is 'ordinarily understood to mean originating from, incident to, or having connection with.' The phrase 'requires only that there be *some* causal relationship between the injury and the risk for which coverage is provided.'" *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (internal citations omitted) (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005)) (emphasis in original).

If 650 Owner prevails on its appeal, the trial court could be required to reopen the question of whether there was a causal relationship between American's conduct and Valbuena's injuries in order to determine whether the indemnification provision of the Construction Contract applies. Given the difference in standards between proximate causation and "arise out of or are connected with," the Court believes it unlikely that the appeal will require a finding regarding whether American proximately caused Valbuena's injuries. However, because nothing before the Court demonstrates that the Underlying Action actually decided the issue of proximate causation and because the pending appeal may implicate causation more generally, it has not been determined with certainty that American did not proximately cause Valbuena's injuries. Moreover, because the issue of whether American proximately caused Valbuena's injuries has not been actually decided in the Underlying Litigation, the issue may need to be decided in this case. Plaintiffs seek a declaration that NY Marine is required to indemnify 650 Owner for the Valbuena action. Complaint ¶ 57. To adjudicate that claim, the Court—or a jury—may need to decide whether American proximately

---

of any machinery or equipment by Contractor (including, but not limited to, scaffolds, cranes, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned by Owner to Contractor or its subcontractors (of any tier).

Construction Contract at Art. 10.4.

caused Valbuena's injuries.  Accordingly, it has not been determined with certainty that American did not proximately cause Valbuena's injuries.  Because proximate causation is still a live issue, it has not been determined with certainty that the NY Marine Policy does not provide coverage to 650 Owner, so NY Marine's duty to defend 650 Owner continues.

The duty to defend continues even though the only claims in which 650 Owner was a defendant have been settled.  650 Owner's indemnification cross-claim was an essential component of its defense of the Underlying Action, so the duty to defend also covers the cross-claim.  *See Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 865 N.Y.S.2d 58, 59 (1st Dep't 2008) (where plaintiff-insurer initiated a third-party claim against the insured of the defendant-insurer, holding the duty to defend extended to the third party claim because the plaintiff-insurer's "third-party claims against the [insured] were an essential component of their defense of the main underlying action, and, accordingly, plaintiff insurer is entitled to reimbursement of the . . . attorneys' fees it incurred in prosecuting those claims") (citing *Perchinsky v. State*, 660 N.Y.S.2d 177, 181 (3d Dep't 1997) (under a contractual indemnity provision, awarding costs incurred pursuing third-party actions for indemnification or contribution "because the filing of the third-party actions was an essential component of the defense of the main action, pursued in good faith and not contrary to the language of the contractual indemnity provision")).[13]  Moreover, the antisubrogation rule does not bar NY Marine from paying for 650 Owner's cross-claim.  Under the antisubrogation rule, "an insurer may not step into the shoes of its insured to sue a third-party tortfeasor—if that third party also qualifies as an insured under the same policy—for damages arising from the same risk covered by the policy." *Millennium Holdings LLC v. Glidden Co.,* 27 N.Y.3d 406, 415 (2016) (internal citations and quotation marks

---

[13] Defendant relies on two cases in which the insurer provided a defense for the insured but was not required to pay for separate counsel retained to prosecute affirmative cross-claims.  *See Nat'l City Bank v. New York Cent. Mut. Fire Ins. Co.*, 775 N.Y.S.2d 679, 680 (4th Dep't 2004) (holding that "where . . . an insurer fulfills its duty under the policy to provide a defense for an insured, hiring separate counsel to pursue an insured's affirmative cross claims is the insured's responsibility.") (citing *Goldberg v American Home Assur. Co.*, 439 N.Y.S.2d 2 (1st Dep't 1981)).  But here, NY Marine refused to defend 650 Owner and the cross-claim was pursued by the same counsel.

omitted).  It does not apply here because 650 Owner is itself pursuing its cross-claim; NY Marine is not stepping into 650 Owner's shoes to try to recover from American.[14]  Therefore, NY Marine's duty to defend covers 650 Owner's ongoing cross-claim.

### b.  Duty to Indemnify

Summary judgment on NY Marine's duty to indemnify 650 Owner is premature because it has not been definitively established in the Underlying Action that American did not proximately cause Valbuena's injuries.  NY Marine had a duty to indemnify 650 Owner "with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" American's acts or omissions.  NY Marine Policy at NYMAGIC000532.  As previously discussed, that requires American to have proximately caused Valbuena's injuries in order for the NY Marine's duty to indemnify 650 Owner to be triggered.  Because that question was not definitively resolved in the Underlying Action, *see supra* Section III.a.ii.B, the Court cannot conclude at this time that NY Marine has no duty to indemnify 650 Owner for the Underlying Action.

### c.  Priority of Coverage

When two insurance policies both cover the same liability, the priority of coverage determines which insurer must pay.  The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit.[15] Determining that NY Marine owes 650 Owner an ongoing duty to defend does not end the inquiry because NY Marine asserts that any coverage was excess on top of coverage provided for in the LIC

---

[14] "The two primary purposes of the antisubrogation rule are to avoid a conflict of interest that would undercut the insurer's incentive to provide an insured with a vigorous defense and to prohibit an insurer from passing its loss to its own insured."  *Id.* (internal citations and quotation marks omitted).  Where, as here, the insurer is not bringing the action, those policies are not implicated.

[15] *See, e.g., Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 848 (S.D.N.Y. 2018) ("Primary insurance policies provide the first layer of insurance coverage, which attaches immediately upon the occurrence of a policy-defined liability or loss.  Excess liability policies . . . by contrast, provide coverage for losses that exceed the limits of the primary policy.  Coverage under an excess policy thus is triggered only after the liability limits of the underlying primary insurance policy have been exhausted.") (citing *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013)).

Policy. Based on an examination of the "other insurance" provisions in the LIC Policy and NY Marine Policy, the NY Marine Policy supplies primary coverage and the LIC Policy supplies excess coverage.

Here, the analysis of priority of coverage begins with an assessment of the competing policies to determine which provides primary coverage. "In insurance contracts the term 'other insurance' describes a situation where two or more insurance policies cover the same risk in the name of, or for the benefit of, the same person. When an insured has more than one potentially applicable policy for a claim, courts determine the insurers' obligations to the insured by applying a body of law developed to resolve 'other insurance' disputes." *Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.,* 92 N.Y.2d 682, 686–87 (1999) (internal citation omitted). "Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA,* 878 N.Y.S.2d 339, 344 (1st Dep't 2009). Where one insurance policy is primary and one insurance policy is excess based on the "other insurance" clauses, the "primary insurer has the primary duty to defend on behalf of its insureds and it generally has no entitlement to contribution of an excess insurer." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.,* 16 N.Y.3d 257, 264 (2011).

NY Marine does not dispute that the NY Marine Policy provided primary coverage. Def.'s Opp. at 16–17. Thus, under *Fieldston*, the issue of priority turns on whether the other insurance provision of the LIC Policy afforded 650 Owner primary or excess coverage. If it was excess, then NY Marine will have no entitlement to contribution from LIC. *See Fieldston*, 16 N.Y.3d at 265. NY Marine argues that both the NY Marine Policy and the LIC Policy provide identical primary coverage, so any duty to defend must be shared by NY Marine and LIC. But the policies are not

identical—the LIC Policy contains an additional other insurance provision entitled "Item 13. Other Insurance Amendment."

Item 13 determines whether the LIC Policy is primary or excess when the insured, BMS, has agreed to provide liability insurance to a person or organization that is an additional insured under the LIC Policy. Item 13 is applicable to this case. First, 650 Owner is an additional insured under the LIC Policy. D.'s 56.1 Statement at ¶ 91. Second, BMS agreed in the BMS Contract to provide 650 Owner with liability insurance. Under clause 8(a)(iii) of the BMS Contract, BMS was required to have a "policy of commercial general insurance against claims for bodily injury or death, personal injury and property damage." BMS Contract at ECF p. 10. The BMS Contract further provided:

> With respect to the policy of insurance required to be carried by BMS pursuant to clause 8(a)(iii) hereof, (1) [650 Owner][16] and the Managing Agent and their respective, owners, members, partners, directors, trustees, officers, employee, any mortgage of [650 Owner] and collectively their successors and assigns shall be named as additional insureds and (2) be primary as respects any insurance or self-insurance maintained by the additional insureds, any insurance maintained by the additional insureds is excess and non-contributory.

*Id.* BMS agreed that 650 Owner would be named as an additional insured on its commercial general insurance policy, triggering Item 13 because BMS had agreed to provide insurance to an organization that was an additional insured under the LIC Policy.

Because Item 13 applies, the Court looks to Item 13 in order to determine whether the LIC Policy operates as primary or excess coverage. To do so, the Court must determine which part of Item 13 applies to this case. Item 13 provides:

> If you are obligated under a written agreement to provide liability insurance on a primary, excess, contingent, or any other basis for any person or organization that qualifies as an additional insured on this policy, this policy will apply solely on the basis required by such written agreement and Paragraph 4. Other Insurance of Section IV – Conditions will not apply. Where the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Paragraph 4. Other Insurance of Section IV – Conditions will govern. However, this insurance is excess over any other insurance available to the additional insured for

---

[16] This provision refers to "650 Madison," which is defined in the BMS Contract as 650 Madison Owner LLC. BMS Contract at ECF p. 7.

which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit".

LIC Policy at LIC/LMIC 2933.

The first two sentences are mutually exclusive. They both address situations in which BMS in a written agreement promises to provide insurance to a person or organization that is an additional insured under the LIC Policy, here, 650 Owner. The first sentence applies when that written agreement specifies the priority of the insurance BMS must provide—that is, whether the insurance operates as primary or excess. The second sentence applies when that written agreement does not specify the priority of the insurance BMS must provide. Pursuant to the first sentence, when the terms of the agreement dictate the priority of the insurance BMS must provide, the LIC Policy applies on that basis. Pursuant to the second sentence, if the written agreement does not specify the priority, the provisions of Paragraph 4 of Section IV of the LIC Policy will determine priority. Paragraph 4 provides that the LIC Policy is primary, except with certain exceptions not applicable here. LIC Policy at LIC/LMIC 2902 ("This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . . .").[17]

Here, there is a written agreement under which BMS agreed to provide 650 Owner with insurance, but it does not specify the required priority of coverage in these circumstances. The BMS

---

[17] Paragraph b. provides that the LIC Policy to BMS is excess over:

> (a) Any of the other insurance  whether primary, excess, contingent or on any other basis: (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"; (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

LIC Policy at LIC/LMIC 2902.

Contract requires BMS to name 650 Owner as additional insured on BMS' insurance policy and that the policy "be primary as respects any insurance or self-insurance *maintained by* the additional insureds . . . ." BMS Contract at ECF p. 10 (emphasis added). That language refers only to insurance policies actually procured by 650 Owner, rather than policies on which 650 Owner is an additional insured.[18] *See In re E. 51st St. Crane Collapse Litig.*, 960 N.Y.S.2d 364, 367 (1st Dep't 2013) ("A reasonable business person would understand the term 'insurance maintained by' to refer to insurance actually procured by East 51st Street (the Illinois Union policy), rather than afforded it as an additional insured."). The BMS Contract thus "does not specify on what basis the liability insurance will apply" because it silent as to priority when, as is the case under the NY Marine Policy, 650 Owner is an additional insured. As a result, this case lands in the realm of the second sentence of Item 13.

Next, the Court examines the impact of the third sentence of Item 13, which provides: "However, this insurance is excess over any other insurance available to the additional insured for which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same 'occurrence', claim or 'suit.'" LIC Policy at LIC/LMIC 2933.[19] When the third sentence applies it renders the LIC Policy excess. The third sentence applies here because 650 Owner, the additional insured under the LIC Policy, is also an additional insured under the NY Marine Policy. As a result, the LIC Policy is excess compared to the NY Marine Policy, which provides primary coverage. Therefore, the LIC Policy need not be exhausted before triggering NY Marine's duty to pay under the NY Marine policy.

---

[18] Defendant does not contest this reading in its reply. *See* D.'s Reply, Dkt. No. 72, at 9–10.

[19] The parties dispute whether the third sentence modifies both the first sentence and the second. But that dispute is not relevant to the Court's analysis here; the third sentence indisputably modifies the second sentence.

### d. Circuity of Action

Finally, the Court must consider whether this case should be dismissed for "circuity of action," which is a doctrine that applies when the litigation would put the parties back in the same position in which they started the litigation. Summary judgment on this issue is inappropriate because there remains a disputed issue of material fact with respect to whether there is "circuity of action" that makes it inappropriate to require NY Marine to pay out under the NY Marine Policy.

"Generally, courts will not allow parties to engage in circuitous action when the foreseeable end result is to put the parties back in the same position in which they began." *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 472 (S.D.N.Y. 2019) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583, 594 (8th Cir. 2002) (citing *Md. Cas. Co. v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 208 F.2d 731, 733 (2d Cir. 1953) (Learned Hand, J.))). "Such a 'litigation [would] clearly [be] circular and would not ultimately change the parties' obligations from their pre-suit positions.'" *Id.* at 473 (quoting *Wal-Mart*, 292 F.3d at 594). In *Maryland Casualty*, the Second Circuit dismissed an action for circuity of action. As summarized by Judge Amon of the Eastern District of New York:

> In *Maryland Casualty*, an insurance company ("plaintiff-insurer") sought reimbursement from a second insurance company ("defendant-insurer") for costs incurred in settling and defending an underlying personal injury lawsuit against an insured of both companies. In an opinion by Judge Learned Hand, the Second Circuit found that, if the defendant-insurer were compelled to reimburse the plaintiff-insurer, the defendant-insurer could then "have obtained a judgment for the same amount against the [tortfeasor]," which would ultimately be paid by the tortfeasor's insurer—the plaintiff-insurer. Accordingly, the Second Circuit concluded that "allow[ing] the plaintiff to recover any part of [the amounts sought], would result in a circuity of action" and dismissed the complaint.

*Mass. Bay Ins. Co. v. Harco Nat'l Ins. Co.*, No. 13-cv-4841(CBA) (RML), 2015 WL 13742420, at *5 (E.D.N.Y. Sept. 22, 2015) (quoting *Md. Cas. Co.*, 208 F.2d at 732–33).

The purported circuity of action in this case is as follows, according to Defendant: LIC insures BMS. The BMS Contract says that BMS will indemnify 650 Owner and its agents (including

American).  650 Owner and American can seek indemnification from BMS.  NY Marine, which insured 650 Owner and American, would be subrogated to 650 Owner's and/or American's rights,[20] so it could seek indemnification from LIC.  That would result in NY Marine recovering from LIC any payments NY Marine would have to make in furtherance of its duty to defend.

The Court cannot determine on the summary judgment record whether circuity of action exists here because the Court cannot determine whether a condition in the indemnification clause of the BMS Contract has been satisfied.  The indemnification clause provides:

> To the fullest extent allowed by law, BMS shall indemnify and hold harmless [650 Owner], its principals, officers, trustees, directors, shareholders, partners, employees, agents and any mortgagee of [650 Owner] (individually, an "Indemnitee" and collectively, the "Indemnitees") from and against all liabilities, claims, suits, damages, judgments, costs and expenses of whatever nature, including reasonable attorneys' fees and disbursements, to which the Indemnitees may become subject by reason of or arising out of (i) any claim for sales tax (and penalties and interest in connection therewith) and (ii) *acts or omissions of BMS and its directors, officers, employees, contractors, subcontractors and agents, which constitute negligence. fraud. malfeasance. breach of fiduciary duty, willful, reckless or criminal misconduct, a breach of this Agreement or any actions of BMS beyond the scope of the authority conferred upon BMS hereunder.*  BMS's obligation to indemnify shall not be limited by the provisions of any Workers' Compensation or other similar act.  BMS shall promptly reimburse the Indemnitees for all amounts, including reasonable attorneys' fees and disbursements which they or any of them are required to pay in connection with or in defense of any of the matters for which they or any of them are entitled to indemnification as set forth above.

BMS Contract at ECF p. 11 (emphasis added).

This indemnification clause is only triggered by acts or omissions "which constitute negligence, fraud, malfeasance, breach of fiduciary duty, willful, reckless or criminal conduct, a breach of this Agreement or any actions of BMS beyond the scope of the authority conferred upon BMS hereunder."  *Id.*  These acts or omissions may be on the part of "BMS and its directors,

---

[20] "Subrogation is '[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.'"  *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,* 352 F.3d 599, 607 n.6 (2d Cir. 2003) (quoting Black's Law Dictionary 1440 (7th ed.1999)).  "It is an equitable doctrine that entitles an insurer to stand in the shoes of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse."  *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 75 (2001).

officers, employees, contractors, subcontractors and agents." *Id.* 650 Owner entered into a contract with BMS under which BMS was to provide certain janitorial services. D.'s 56.1 Statement at ¶¶ 80–81. 650 Owner was not one of BMS' directors, officers, employees, contractors, subcontractors or agents, so the acts or omissions triggering the indemnification provision must be those of BMS.

BMS hired Valbuena, was responsible for supervising and directing its employees, and was responsible for furnishing and maintaining the equipment and supplies required to perform its work. *Id.* at ¶¶ 82–84. But the Underlying Action settled without any admission or determination of liability or fault on the part of 650 Owner, let alone BMS. On this summary judgment record, the Court cannot determine whether BMS had an indemnification obligation based on its "negligence, fraud, malfeasance, breach of fiduciary duty, willful, reckless or criminal conduct." Without an indemnification obligation, the circuity of action is cut off. There exists a disputed issue of material fact that precludes summary judgment on the circuity of action argument.[21] Therefore, while the other insurance provisions render the NY Marine Policy primary, summary judgment is inappropriate on the issue of whether the circuity of action doctrine prevents NY Marine from having to pay out under the policy.

## IV.    CONCLUSION

Plaintiffs' motion for summary judgment seeking a determination that NY Marine owes a duty to defend in the Underlying Action is GRANTED as to 650 Owner and DENIED as to 650 Manager. Plaintiffs' motion is GRANTED with respect to their request for a determination that the NY Marine Policy applies on a primary basis before the LIC Policy, but it is still undetermined

---

[21] Because of this disputed issue of material fact, the Court does not reach several other issues relevant to the circuity of action argument. For example, the Court need not determine whether there would exist a circuity of action if NY Marine were subrogated to the indemnification claim of Americon in order to recover money paid in defense of 650 Owner.

whether NY Marine must pay out under the NY Marine Policy because of the outstanding issue regarding circuity of action.

Defendant's motion for summary judgment seeking a declaration that NY Marine does not owe a duty to defend in the Underlying Action is GRANTED as to 650 Manager and DENIED as to 650 Owner.  Defendant's motion for summary judgment seeking a declaration that NY Marine does not have a duty to indemnify 650 Owner is DENIED.  Its motion for summary judgment seeking a declaration that it has no obligation to reimburse Plaintiffs for the defense fees and costs incurred is DENIED.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 52 and 55.

SO ORDERED.

Dated:  December 5, 2020

_____
GREGORY H. WOODS
United States District Judge