USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 3/9/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

LIBERTY MUTUAL INSURANCE CORPORATION and LM INSURANCE CORPORATION,

Plaintiffs,

-against-

NEW YORK MARINE AND GENERAL INSURANCE COMPANY,

Defendant.

---------------------------------------------------------------X

1:19-cv-182-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

On December 7, 2020, the Court issued a memorandum opinion and order ruling on the parties' cross motions for summary judgment. Dkt. No. 74. The Court held that Defendant New York Marine and General Insurance Company ("NY Marine") had an ongoing duty to defend 650 Madison Owner, LLC ("650 Owner"), which was insured by Plaintiff LM Insurance Corporation ("LIC"). The Court also denied NY Marine's motion for summary judgment regarding, among other things, the applicability of the "circuity of action doctrine." Following dueling motions for partial reconsideration filed by the parties, the Court reconsiders its decision and modifies its summary judgment holding as described below. The motions for reconsideration are GRANTED in part and DENIED in part.

## I. BACKGROUND

The Court described the factual and procedural history of this case in *Liberty Mutual Insurance Corporation et al. v. New York Marine and General Insurance Company* (*Liberty I*), 505 F. Supp. 3d 260 (S.D.N.Y. 2020).[1] The Court assumes the reader's familiarity with *Liberty I*, and as such it does not

[1] Unless otherwise defined in this memorandum opinion and order, all defined terms have the meaning ascribed to them in *Liberty I*.

detail all of that history again here. In short, this case is about which insurance company will pay for the injuries suffered by German Valbuena in an accident at a construction site at which Americon Construction Inc. ("Americon") had been performing construction in a building owned by 650 Owner, and which insurance company will foot the bill for the costs of defending 650 Owner in the resulting state court action.

In *Liberty I*, the Court held that NY Marine had a duty to defend 650 Owner in the Underlying Action "because the Underlying Complaint demonstrated a reasonable possibility that NY Marine would be required to indemnify 650 Owner." *Liberty I*, 505 F. Supp. 3d at 269. The Court also found that "[t]he duty to defend continues because it has not been determined with certainty that the NY Marine Policy does not provide coverage to 650 Owner," since "[n]othing in the summary judgment record supports the conclusion that the court in the Underlying Action actually decided that Americon did not proximately cause Valbuena's injuries." *Id.* at 273. For the same reason, the Court found that "the Court cannot conclude at this time that NY Marine has no duty to indemnify 650 Owner for the Underlying Action." *Id.* at 276.

The Court next determined that the NY Marine Policy supplies primary coverage and that the insurance policy issued by LM Insurance Company need not be exhausted before triggering NY Marine's duty to pay under the NY Marine Policy. *Id.* at 276–79. The Court next ruled on a defense asserted by NY Marine—namely that the "circuity of action" doctrine made it inappropriate to require Defendant to pay out under the NY Marine policy. *Id.* at 279–81. The Court held that it could not grant Defendant summary judgment with respect to the applicability of the doctrine because an issue of fact existed regarding whether the indemnification clause of the BMS Contract applied. *Id.* at 279.

Plaintiff LIC and Defendant each filed partial motions for reconsideration. Dkt. Nos. 76, 80. Defendant filed its opposition to LIC's motion on December 28, 2020, Dkt. No. 86 ("D.'s

Opp."), to which LIC replied on January 4, 2021. Dkt. No. 87 ("D.'s Reply"). Plaintiffs opposed Defendant's motion on January 11, 2021, Dkt. No. 89 ("Ps.' Opp."), and Plaintiffs filed their reply on January 18, 2021. Dkt. No. 90. The Court will take up each motion in turn.

## II. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigr. and Customs Enf't*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted).

## III. DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant seeks reconsideration of the Court's denial of its motion for summary judgment seeking a declaration that it had no obligation to indemnify 650 Owner for liability incurred in the Underlying Action. That motion is GRANTED in part and DENIED in part.

In *Liberty I*, the Court denied Defendant's motion for summary judgment seeking a determination that NY Marine has no duty to indemnify 650 Owner for the Underlying Action. The Court held that "[s]ummary judgment on NY Marine's duty to indemnify 650 Owner is premature because it has not been definitively established in the Underlying Action that Americon did not

proximately cause Valbuena's injuries." *Liberty I*, 505 F. Supp. 3d at 275. The Court found that "[n]othing in the summary judgment record supports the conclusion that the court in the Underlying Action actually decided that Americon did not proximately cause Valbuena's injuries." *Id.* at 273. And the Court noted that "a finding of a lack of proximate causation was not necessary for Americon to prevail on its motion for summary judgment dismissing Valbuena's claims—for each of Valbuena's claims against Americon, Americon asserted a basis of dismissal independent of proximate causation." *Id.* As a result, the Court held that "the dismissal of the claims against Americon did not establish with certainty that Americon did not proximately cause Valbuena's injuries." *Id.*

In seeking reconsideration, Defendant argues as follows:

> NY Marine respectfully submits that this Court overlooked the undisputed fact that the Court in the Underlying Action dismissed not only Valbuena's Labor Law claims against Americon, but also Valbuena's common law negligence/Labor Law § 200 claim and 650 Owner's common law indemnification and contribution cross claims. In dismissing these claims, which under well-settled New York law require the plaintiff to establish proximate cause, the Court in the Underlying Valbuena Action necessarily determined that Americon did not proximately cause Valbuena's injuries. Simply put, the Court would not have let Americon completely out of the case if any party had been able to point to any act or omission on the part of Americon that proximately caused Valbuena's injuries. Rather, these claims were dismissed because the Court found that Americon was not at fault for the incident, either in whole or in part.

D.'s Memorandum of Law, Dkt. No. 82 ("D.'s Mem."), at 1. In support of its argument, Defendant presents a number of documents that were not presented to the Court in support of the initial motion for summary judgment.

Defendant's motion does not meet the threshold showing required for a motion for reconsideration. First, Defendant does not point to new principles. It argues that the Court erred, but in substance, it is seeking to relitigate issues presented to the Court, and considered by it, in the briefing with respect to its original decision. Second, Defendant bases its argument in part on evidence that it failed to present to the Court in connection with the original motion. As Plaintiff

accurately points out, however, "to qualify as a ground for reconsideration, new evidence must have been not previously available to the movant." *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 319 F. Supp. 3d 747, 754 (S.D.N.Y. 2018) (internal quotation omitted). The additional information presented to the Court by Defendant in support of its motion was plainly available to Defendant at the time of the motion; Defendant simply chose not to present the information to the Court. Defendant's motion for reconsideration must be denied in large part because it does not make the threshold showing required for the Court to grant such a request.[2]

The motion should be granted in part, however, to clarify the language of the introduction to the Court's decision in *Liberty I*. In the introductory paragraph to the opinion, the Court summarized the holding of the opinion as follows: "because the state court action has not actually decided the issue of proximate causation, it has not been determined with certainty that Americon did not proximately cause Valbuena's injuries." *Liberty I*, 505 F. Supp. 3d at 265. This language is not part of the holding of the opinion: it is part of the summary introduction to the Court's opinion. Still, it does not accurately capture the Court's holding. As described in the body of the opinion, the Court did not hold that the state court did not base its decision on a lack of proximate cause, but rather that the Court could not determine with certainty that the state court's dismissal

[2] Defendant's argument at summary judgment relied unduly on Plaintiff's response to one statement of fact in Defendant's 56.1 Statement. Defendant describes its position as follows: "Significantly, the parties did not dispute that the Court in the Underlying Action had determined that Valbuena's injuries were not proximately caused, in whole or in part, by Americon. In its Counterstatement of Material Facts, LIC specifically admitted this: . . . . 96. The Court's decision in the Underlying Action indicated that Valbuena's injuries were not proximately caused, in whole or in part, by Americon. RESPONSE: Admits, but specifically notes that the decision is subject to appeal." D.'s Mem. at 3. There are several issues with Defendant's position. First, the Court looked at the record evidence that was presented by Defendant in support of the asserted fact and found that it did not conclusively support the contention. Second, the language of the 56.1 Statement is not as definitive as Defendant represents: it states that the decision "indicates" that the injuries were not proximately caused by Americon. "Indicate" in this context means "to be a sign, symptom, or index of // the high fever *indicates* a serious condition." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/indicate (Last visited March 5, 2022). That the state court's ruling "indicates" a lack of proximate causation does not mean that proximate causation was necessarily wanting, in the same way that a high fever does not mean that the sufferer necessarily has a serious condition. "Indicated" is not a synonymous with "concluded" or "held." Third, it is clear that Plaintiff disagrees with the contention that the state court concluded that proximate cause did not exist. If it had, this motion would have been unnecessary.

was based on a lack of probable cause. *Liberty I*, 505 F. Supp. 3d at 276. The motion for reconsideration is granted to clarify that the introduction's summary description of the Court's holding is not as precise as the holding itself: the Court did not hold that the state court has not actually decided the issue of proximate causation. Instead, the Court held that the limited reasoning presented by the state court for its decision, as presented to the Court by the parties in connection with the summary judgment motion, did not allow the Court to find with certainty that the state court had ruled that proximate cause was wanting.

The ruling of the First Department in the Underlying Action during the period in which this motion for reconsideration was pending does not disturb the decision of the Court in its original opinion. If anything, it supports the reasoning of the Court in *Liberty I*. First Department Decision, Dkt. No. 49-1. The First Department held that Valbuena's accident triggered the indemnification provision of the Americon contract, which required indemnification for personal injuries "which arise out of or are connected with . . . [a]ny accident or occurrence which happens, or is alleged to have happened, in or about the place where such Work is being performed . . . ." First Department Decision at 2. Plaintiff argues that to reach its decision, the First Department needed to conclude that Americon proximately caused Valbuena's injuries. *See generally* Dkt. No. 95. Defendant argues that the First Department's decision did not determine proximate causation, but that, as alleged, the facts met the "arose from" standard, noting the difference between the two standards as described by the Court in *Liberty I*. *See generally*, Dkt. No. 94; *see also Liberty I*, 505 F. Supp. 3d at 274 ("Given the difference in standards between proximate causation and 'arise out of or are connected with,' the Court believes it unlikely that the appeal will require a finding regarding whether Americon proximately caused Valbuena's injuries. However, because nothing before the Court demonstrates that the Underlying Action actually decided the issue

of proximate causation and because the pending appeal may implicate causation more generally, it has not been determined with certainty that Americon did not proximately cause Valbuena's injuries."). The First Department's decision does not impact the Court's decision in *Liberty I*. To the extent that Plaintiff is now asking for the Court to interpret the decision of the First Department and affirmatively rule that it means that that court must have found proximate causation—that is not an issue that the Court can resolve through a motion for reconsideration of its prior opinion.

While the Court need not engage with the substantive arguments presented by Defendant because it failed to make the threshold showing for a motion for reconsideration, as dicta, the Court will comment here on Defendant's argument that the state court's dismissal of the contribution claim necessarily required the state court to find that Americon did not proximately cause Valbuena's injuries.[3] "The law of contribution in New York has both common law, *Dole v. Dow Chemical Co.,* [331 N.Y.S.2d 382] (1972), and statutory, N.Y. Civ. Prac. Law § 1401 *et seq.* (McKinney 1976), roots." *Goodkin v. United States*, 773 F.2d 19,

[3] Also, as dicta, the Court notes that the dismissal of the common law indemnification cross-claim did not necessarily require a finding that Americon did not proximately cause the injuries. "Common law indemnification is warranted where a defendant's role in causing the plaintiff's injury is solely passive, and thus its liability is purely vicarious. . . . [A] party which has actually participated in the wrongdoing is not entitled to indemnification." *Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc.*, 847 N.Y.S.2d 151, 155 (2nd Dep't 2007). Thus, dismissal of 650 Madison's indemnification cross claim against Americon could have been based on this exacting standard, not a finding regarding proximate causation.

Defendant also argues that the dismissal of Valbuena's common law negligence and New York Labor Law § 200 claims required a finding that Americon did not proximately cause Valbuena's injuries. In support, Defendant asserts that "where . . . a plaintiff's injuries stem not from the manner in which the work was being performed, but, rather, from a dangerous condition on the premises, a general contractor may be liable in common-law negligence and under Labor Law § 200 if it has control over the work site and actual or constructive notice of the dangerous condition." D.'s Reply at 5 (quoting *Keating v. Nanuet Bd. of Educ.*, 835 N.Y.S.2d 705, 708 (2nd Dep't 2007)). That is true. But that standard only confirms that dismissal of the common law negligence and Labor Law § 200 claims did not require a finding regarding proximate causation. The dismissal of those claims could just as well have been because Americon had no control over the work site or did not have notice of the dangerous condition, rather than because of a lack of proximate causation. Americon raised both of those arguments in its summary judgment briefing in the Underlying Action. Americon MSJ at 10 ("Plaintiff's Labor Law § 200 and common law negligence causes of action against Americon merit dismissal as the evidence conclusively establishes that Americon did not exercise requisite supervisory control over Valbuena's work or the injury producing activity where the accident did not arise from any dangerous condition at the worksite."). Thus, the dismissal of the common law negligence and Labor Law § 200 claims did not require a finding that Americon did not proximately cause Valbuena's injuries.

23 (2d Cir. 1985). "The now established rule that contribution is apportioned according to the relative culpability of each tortfeasor was first articulated in [*Dole*]. The holding in that case was subsequently codified: 'The amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his equitable share. The equitable shares shall be determined in accordance with the relative culpability of each person liable for contribution.'" *Id.* (quoting N.Y. Civ. Prac. Law § 1402). "The 'critical requirement' for apportionment by contribution under CPLR article 14 is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (quoting *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 603 (1988)). Contribution "may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." *Id.* "[A] defendant may seek contribution from a third party even if the injured plaintiff has no direct right of recovery against that party, either because of a procedural bar or because of a substantive legal rule." *Id.* at 182.

In arguing for the dismissal of the contribution cross-claim, Americon asserted two arguments: first, that it was not negligent, and second, that even if it was negligent, it did not proximately cause Valbuena's injuries. Declaration of Eric R. Leibowitz in Support of Defendant's Motion for Summary Judgment ("Leibowitz Decl."), Dkt. No. 54, Ex. L ("Americon MSJ"), 24–25. The concept of proximate cause "stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct." *Derdiarian v. Felix Contracting Corp.*, 434 N.Y.2d 308, 314 (1980). "[P]roximate cause is a question separate and apart from that of duty and negligence and it is only when these initial issues are resolved against the tort-feasor that the question of proximate cause arises." *Dunn v. State*, 29 N.Y.2d 313, 318 (1971).

Given the limited record, the Court simply does not know whether the state court's ruling was based on finding of a lack of negligence or a lack of proximate causation. The state court may have dismissed the claim based on a finding of lack of negligence. If so, it would not have reached the issue of proximate cause, which is "a question separate and apart from that of . . . negligence . . ." *Id.* So it is possible that the state court did not rule on the issue of proximate cause in denying the contribution claim.

Defendant also seeks reconsideration of the Court's determination that NY Marine's duty to defend 650 Owner continued even after the claims against 650 Owner in the Underlying Action were settled, arguing that NY Marine need not pay for the prosecution of 650 Owner's claim for contractual indemnification against Americon. D.'s Mem. at 10–15. Again, Defendant has not made the threshold showing required for the Court to reconsider its decision. However, the Court notes as dicta that reconsideration would not be warranted. As Defendant notes in its brief, the courts "that have held that a third-party complaint is an essential component of the insured's defense have done so on the basis that it is 'inextricably intertwined' with the defense of plaintiff's claims and necessary to the defense of the litigation as a strategic matter to defeat, reduce or limit the insured's liability." *Id.* at 13. That is arguably the role of the contractual indemnification cross-claim here—it would reduce the liability incurred by passing it off to Americon.

Defendant's motion for reconsideration is granted in part and denied in part. The motion is granted to clarify that the Court's ruling in *Liberty I* did not hold that the state court had not actually decided the issue of proximate cause. Instead, the Court held that "the dismissal of the claims against Americon did not establish with certainty that Americon did not proximately cause Valbuena's injuries." *Liberty I*, 505 F. Supp. 3d at 273.

Fundamentally, the issue with this motion is that the parties are asking this Court to read the tea leaves behind a very cursory set of rulings by the state court, which provided no description of

the reasoning for its decision.[4] So, the Court is presented with the task of scrutinizing whether there is any possible legal basis for the state court's decision other than a finding of lack of probable cause. The Court found that there was possibly some other basis, but that it could not determine the basis for the state court's decision with certainty with the limited record provided to it by the parties in the summary judgment motion.

Judge Calabresi is credited with developing the concept of the "cheapest cost avoider" in tort law. *See* Guido Calabresi, *The Cost of Accidents: A Legal and Economic Analysis*. A similar principle might operate here: the Court and the parties have spent hours upon hours and written pages upon pages working to ascertain the possible reasoning behind the state court's rulings. All of that work might have been obviated by three or four brief paragraphs describing the reasoning behind the state court's decision. In this and similar cases, the Court encourages the parties to request that the state court issue some statement of the basis for its decisions so that the parties and this Court need not decrypt oracular summary orders. In that way, the burden might fall on the cheapest cost avoider.

## IV. LIC'S MOTION FOR RECONSIDERATION

Plaintiff LIC seeks reconsideration of the Court's determination "that summary judgment is inappropriate on the issue of whether the 'circuity of action' doctrine prevents [Defendant] from having to pay out under the policy." Dkt. No. 76. That motion is GRANTED in part.

As the Court explained in *Liberty I*, "[g]enerally, courts will not allow parties to engage in circuitous action when the foreseeable end result is to put the parties back in the same position in which they began." *Liberty I*, 505 F. Supp. 3d at 279 (quoting *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 472 (S.D.N.Y. 2019)). The Court described the purported circuity of action as follows:

> LIC insures BMS. The BMS Contract says that BMS will indemnify 650 Owner and its agents (including Americon). 650 Owner and Americon can seek indemnification

[4] Defendant generously describes the ruling as "not a model of clarity." Dkt. No. 94, at 5.

> from BMS. NY Marine, which insured 650 Owner and Americon, would be subrogated to 650 Owner's and/or Americon's rights, so it could seek indemnification from LIC. That would result in NY Marine recovering from LIC any payments NY Marine would have to make in furtherance of its duty to defend.

*Liberty I*, 505 F. Supp. 3d at 279-80. The Court identified a disputed issue of fact as to one of the links in the chain of the purported circuity of action—the Court found that it could not "determine on the summary judgment record whether circuity of action exists here because the Court cannot determine whether a condition in the indemnification clause of the BMS Contract had been satisfied." *Id.* at 280. LIC's motion for reconsideration asserts that the Court overlooked that 650 Owner had released BMS from all claims, causes of action, contracts, and other liabilities arising from the Underlying Action, which cut off the circuity of action, causation issues notwithstanding.

The Release did cut off the circuity of action. The circuity of action is dependent on NY Marine being subrogated to 650 Owner's or Americon's rights in order to seek indemnification under the BMS Contract. Because NY Marine has no such right to seek indemnification from BMS, and ultimately LIC, in a subrogation action, there is no circuity of action. As a result, while there was an issue of fact that the Court could not resolve on summary judgment, that issue was not material.

Subrogation is an equitable doctrine that "allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 90 N.Y.2d 654, 660 (1997). "The insurer's rights against a third party are derivative and limited to the rights the insured would have against that third party. Therefore, an insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured." *Nationwide Mut. Ins. Co. v. U.S. Underwriters Ins. Co.*, 59 N.Y.S.3d 1, 2 (1st Dep't 2017) (quoting *Westport Ins. Co. v Altertec Energy Conservation, LLC*, 921 N.Y.S.2d 90, 92 (2d Dep't 2011)) (internal citations and quotation marks omitted). "Under New York law, "[a]n

insurer's right of subrogation attaches, by operation of law, upon its payment of an insured's loss." *St. Paul Fire & Marine Ins. Co. v. Ayn Enterprises Inc.*, No. 08-cv-465 (BSJ), 2010 WL 1645091, at *3 (S.D.N.Y. Apr. 22, 2010) (quoting *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 260 (2d Cir. 1999)) (alteration in original).

"When an insured settles with or releases a third party from liability for a loss that the third party has caused, the insurer's subrogation rights against such party may be destroyed." *Mazzola*, 175 F.3d at 260 (quoting *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992)); *see also St. Paul Fire*, 2010 WL 1645091, at *2 ("'The rights to which the subrogee succeeds are the same as, but no greater than, those of the person for whom he is substituted—he cannot acquire any claim, security, or remedy the subrogor did not have.' Because [the subrogor] released all of its claims against [the third party], [the subrogee] likewise has no cause of action against [the third party].") (quoting 73 Am.Jur.2d Subrogation § 61); *OneBeacon Am. Ins. Co. v. Whitman Packaging Corp.*, 999 N.Y.S.2d 364, 365 (1st Dep't 2014) (holding plaintiff-insurer's subrogation claim was precluded by a release because plaintiff "can only recover if the insured could have recovered and its claims as subrogee is subject to whatever defenses the third party might have asserted against its insured"). However, "where a third party obtains a release from an insured '[1] with knowledge that the latter has already received payment from the insurer or [2] with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such a release does not bar the right of subrogation of the insurer.'" *St. Paul Fire*, 2010 WL 1645091, at *3 (quoting *Gibbs* v, 966 F.2d at 107 (2d Cir. 1992)) (alterations in original).[5]

[5] There is also an exception when "by express provision in the release executed to the third party or by necessary implication arising from the circumstances of the execution of the release that the settling parties reserved the rights of the insurer against the third-party tort-feasor or otherwise limited the extent of their settlement to achieve that result." *Weinberg v. Transamerica Ins. Co.*, 62 N.Y.2d 379, 381–82 (1984). But the Release contains no such provision or implication, and Defendant does not argue that this exception applies.

Here, in connection with the settlement of the Underlying Action, 650 Owner released BMS "from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands . . . associated with, related to, arising out of, or in connection with" the Underlying Action. Declaration of Marshall T. Potashner in Opposition to Summary Judgment ("Second Potashner Decl."), Dkt. No. 61, Ex. 2 (the "Release"), at 1. LIC provided 650 Owner and 650 Manager a defense for the underlying action. Ps.' 56.1 Statement ¶ 27. LIC also agreed to pay $900,000 on behalf of 650 Owner in connection with the settlement of the Underlying Action. Second Potashner Decl., ¶ 3. NY Marine, on the other hand, concedes that it "ultimately denied any obligation to provide additional insured coverage." D.'s 56.1 Response ¶ 36.

Because of the Release, NY Marine would be unable to recover as 650 Owner's subrogee on an indemnification claim against BMS. When 650 Owner settled the Underlying Action and released BMS from all claims, NY Marine's subrogation rights against BMS were destroyed. *See*, *e.g.*, *Mazzola*, 175 F.3d at 260. Because NY Marine's subrogation rights against 650 Owner were destroyed by the Release, NY Marine would not succeed in a subrogation action seeking indemnification from BMS.[6] *Accord Bunge v. London & Overseas Ins. Co.*, 394 F.2d 496, 497 (2d Cir. 1968) ("An insurer who has not paid its insured's claim has no right in claims which the insured has against third parties. Since [the insured] has executed a release, its rights against [the third party] are extinguished; thus, even if [the

[6] A release does not bar a subrogation action where there is fraud or collusion. *See, e.g., Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 505 F. Supp. 840, 844 (S.D.N.Y. 1981) ("[W]here a third-party tortfeasor is effectively released from liability by a settlement between the insured and the tortfeasor entered into before an insurer's payment of the loss, the settlement and release bar the insurer's right of recovery from the tortfeasor, in the absence of fraud or collusion against the insurer."). Defendant appears to imply that there was fraud or collusion by arguing that "NY Marine was ready and willing to participate in the settlement negotiations. However, LIC took it upon itself to settle with Valbuena behind closed doors without the participation of NY Marine in order to obtain a release of its named insured and subvert the underlying parties' contractual indemnification agreements and NY Marine's subrogation rights." D.'s Opp. at 4. But this assertion of fraud and collusion is unsupported. And in any event, NY Marine's subrogation rights never attached because NY Marine never paid.

insurer] were now to pay [the insured] in full, it would succeed to no rights against [the third party].").

The exception described in *St. Paul* and *Gibbs* is inapplicable. Here, NY Marine's subrogation rights never attached because LIC—not NY Marine—defended 650 Owner and paid out the $900,000 settlement. As a result, when it obtained the Release, BMS could not have had knowledge that 650 Owner received payment from NY Marine because no such payment was made. And BMS could not have had "information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights," *St. Paul Fire*, 2010 WL 1645091, at *3, because those subrogation rights never attached. As a result, the Release prevents NY Marine from seeking indemnification from BMS. *See St. Paul Fire*, 2010 WL 1645091, at *3 ("Because [the third party] obtained a Release from [the insured] encompassing all claims which [the insured] and its successors and permitted assigns had against [the third part] before [the insurer's] subrogation rights attached, the Release precludes [the insurer's] causes of action against [the third party] as a matter of law."). That cuts off the circuity of action.

NY Marine argues that, even if the Release cut off any circuity of action based on an indemnification claim by 650 Owner against BMS, NY Marine could seek indemnification from BMS by subrogating to an indemnification claim by Americon against BMS. But NY Marine would not be able to stand in the shoes of Americon in order to seek indemnification from BMS. NY Marine's subrogation rights as to Americon never attached because NY Marine has not paid anything on behalf Americon. Nor could the outcome in this action require NY Marine to pay anything on behalf of Americon. Therefore, NY Marine cannot bring a subrogation action against BMS, or its insurer LIC.

As explained by the Court in *Liberty I*, the circuity of action is dependent on NY Marine being subrogated to the rights of either 650 Owner or Americon in order to seek indemnification

from BMS and ultimately recover from BMS' insurer, LIC. Because NY Marine would be unable to prevail in such a subrogation action, whether based on 650 Owner's rights or Americon's rights, there is no circuity of action. Because the Release cut off the only potential avenue by which a circuity of action could be completed, LIC's motion for reconsideration is GRANTED. The circuity of action doctrine does not prevent NY Marine from having to pay out under the NY Marine Policy.

While the Court is granting Plaintiff's motion for reconsideration on this point, the Court pauses to note that Plaintiff misunderstood the effect of the Court's original ruling. In *Liberty I*, the Court wrote that "Defendant's motion for summary judgment seeking a declaration that NY Marine does not have a duty to indemnify 650 Owner is DENIED. Its motion for summary judgment seeking a declaration that it has no obligation to reimburse Plaintiffs for the defense fees and costs incurred is DENIED." *Liberty I*, 505 F. Supp. 3d at 281. The language of the Court's opinion could not be much clearer that the Court had denied Defendant's request that the Court declare that it was not liable on the basis of the circuity of action argument that it had presented.

Yet, in its memorandum of law in support of the motion for reconsideration, Plaintiff writes the following: "In determining the cross-motions for summary judgment, this Court held that, due to NY Marine's subrogation rights, an issue of fact exists as to whether the 'circuity of action' doctrine prevents NY Marine from having to pay out under the policy. As such, this Court held that NY Marine does not currently have to honor its duty to defend and pay for 650 Owner's defense of the underlying action. . . ." Dkt. No. 78. The first sentence of this statement is accurate, but the second sentence simply does not follow from the first. Plaintiff's interpretation of the Court's order is not reasonable: By finding that it could not conclude that Defendant's defense applied as a matter of law, and thus denying Defendant's motion, the Court was not effectively granting the relief requested by the motion. By denying Defendant's motion, the Court was denying Defendant's

motion. Put simply, the outcome of Plaintiff's motion for reconsideration here is the same as that which followed the Court's decision in *Liberty I*: Defendant's motion for summary judgment is DENIED.

## V. CONCLUSION

For the reasons stated above, the parties' respective motions for reconsideration are GRANTED in part and DENIED in part.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 76 and 80.

SO ORDERED.

Dated: March 9, 2022
New York, New York

GREGORY H. WOODS
United States District Judge